BISHOP TRUST CO., LTD., Executor of the Estate of ALICE KAMOKILA CAMPBELL, Deceased, Plaintiff-Appellee *v.* KAMOKILA DEVELOPMENT CORPORATION, Defendant-Appellant.

NO. 5770

OCTOBER 25, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY KIDWELL, J.

This appeal is from a judgment cancelling an assignment of lease and a development agreement between Plaintiff's decedent, Alice Kamokila Campbell, and Appellant. We affirm the judgment. We will confine our attention to the facts which are material to our decision and will not attempt to present the full story developed at the trial.

The documents in question are dated November 30, 1968. Mrs. Campbell was then the holder of a lease from the trustees of the estate of James Campbell which demised 37.21 acres of seashore property, subject to automatic termination of the lease as to 21.70 acres on January 1, 1970, for the term of 55 years from January 1, 1959, of which about 45 years were unexpired. The lease contained a covenant and condition against assignment by the lessee without the consent of the trustees. Mrs. Campbell was about 84 years old and concerned about provision for an adopted son at her death. Appellant corporation was formed pursuant to an agreement between Mrs. Campbell, Roy Campos, George Campos and William C. Vannatta, for the purpose of entering into the development agreement and receiving the lease assignment. Upon its formation, the corporation had a stated capital of $1000, represented by 100 shares. Mrs. Campbell received 25 of the shares in exchange for the assignment of the lease, and the remaining 75 shares were issued to the named individuals and others for $10 per share.

By the development agreement, Mrs. Campbell agreed to assign the lease to Appellant, which undertook to furnish the necessary management for the development of the leasehold lands by increments and the promotion and sale to the public of improvements thereon and to be responsible for advancing all costs of the development. Appellant agreed immediately to enter into negotiation with the trustees of the Campbell Estate for an extension of the lease and cancellation of the provisions for early termination as to the 21.70 acres. Mrs. Campbell was entitled to a month-to-month tenancy of the lands while not required for development, at the lease rental.

The assignment document transferred the lease to Appellant for a recited consideration of $10, without mention of the development agreement. Appellant agreed to pay the rental and perform Mrs. Campbell's obligations as lessee.

Appellant requested the trustees of the Campbell Estate to consent to the assignment of lease, to extend the lease and

to cancel the provisions with respect to the 21.70 acres. These requests were not granted. The trustees advised Appellant that the leased lands, as well as the surrounding land, were under lease to West Beach Development Corporation, subject to the lease to Mrs. Campbell. Appellant attempted negotiation with West Beach Development Corporation, looking toward joint development of the leased lands and the surrounding lands, without result. At some time, Mrs. Campbell entered into a negotiation with West Beach Development Corporation which culminated in an agreement dated August 9, 1971, to which the trustees of the Campbell Estate were also parties. This agreement provided for the admission of Mrs. Campbell as an additional limited partner in a partnership for the development of the leased and surrounding lands upon the termination, by legal proceedings or otherwise, of the rights of Appellant in the leased lands and the surrender by Mrs. Campbell of her lease.

This action was instituted by Mrs. Campbell on July 12, 1971, against Appellant together with William C. Vannatta, George L. Campos and Roy Campos, alleging that she was induced to enter into the development agreement and assignment of lease by the fraudulent representations of the defendants, alleging failure of performance, and praying cancellation of the agreement and assignment. The defendants answered on August 6, 1971, denying certain allegations of the complaint and admitting others, but setting forth no affirmative defenses. Mrs. Campbell died on October 23, 1971. On January 25, 1973, the defendants moved to amend the answer to add the affirmative defenses of waiver, ratification, estoppel and laches. Plaintiff (Appellee) opposed the motion upon the ground that the proposed defenses were premised upon alleged statements made by Mrs. Campbell in the presence of the defendants and that the defendants' failure to assert the proposed defenses until after Mrs. Campbell's death was prejudicial to Appellee. The motion to amend was denied. Prior to trial, the individual defendants were dismissed by agreement.

The trial was to the court, which found that Appellant had

not completed any of its undertakings in the agreement and that no improvements had been placed on the property, that the assignment and agreement were given by Mrs. Campbell without consideration adequate in law, that there was a failure of consideration and that Appellant was incapable of performing its undertakings. The court also found that Appellant had incurred expenses and performed services in its attempts to arrange for development or purchase of the property by some other firm, which entitled Appellant to receive the sum of $29,000 from Appellee to prevent unjust enrichment of Appellee. The judgment cancelled the assignment and agreement, upon condition that Appellee pay to Appellant the sum of $29,000 and transfer to Appellant all shares of the stock of Appellant owned by Appellee. There is no cross-appeal by Appellee and Appellant has not questioned the adequacy of the award to make Appellant whole with respect to the efforts to accomplish performance.

I

In this appeal, Appellant challenges most of the findings of the trial court. However, it is undisputed that development of the property in accordance with Appellant's undertaking has not occurred. Since we conclude that this failure of performance entitles Appellee to restitution of the property transferred to Appellant pursuant to the agreement, we have no occasion to consider most of the disputed findings. We need not consider whether the promised performance was adequate consideration, whether Appellant was capable of performing its undertaking or whether impossibility may relieve Appellant from liability in damages for its failure of performance. The relevant fact is that Appellee has not received what was promised in exchange for the property transferred to Appellant, and its retention would unjustly enrich Appellant.

The right to rescind and bring an action for restitution is

well recognized as an alternative to an action for damages where there has been repudiation or a material breach of a contract. 12 WILLISTON, CONTRACTS § 1455 (3d ed. 1970). But the right is not limited to cases where there is a liability in damages for breach of the contract. As stated by Williston: "Indeed, wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract, restitution of the value of what has been given must be allowed." *Ibid.*, § 1479. Where performance of a contract by one party becomes excusably impossible and "the other party has partly or wholly performed without receiving compensation, justice requires the imposition of a quasi contractual obligation on the party receiving such performance to pay its fair value." 6 WILLISTON, CONTRACTS § 1972 (rev. ed. 1938). To the same effect are 5 CORBIN, CONTRACTS § 1102 (1964) and RESTATEMENT OF CONTRACTS § 468 (1932).

The agreement did not provide a time for performance of the development, and must be read as requiring that performance be commenced within a reasonable time. *Benassi v. Harris*, 147 Conn. 451, 162 A.2d 521 (1960). Appellant had made no start on the improvement of the land, and had been wholly unsuccessful in its attempts to surmount the barriers to the proposed development, when the action was instituted more than 2½ years after the date of the agreement. A reasonable time to commence the improvement of the land had long passed and there was a failure of Appellant's performance under the agreement.

Appellant's failure of performance was such as to entitle Mrs. Campbell to restitution of the property given by her in exchange for the promised performance. It is variously stated that the right of restitution exists where the non-performing party has committed a "material", or a "total" or a "vital" breach of the contract, which goes to its "essence". RESTATEMENT OF RESTITUTION § 108 (1937); 5 CORBIN, CONTRACTS § 1104 (1964). Here the agreement conferred no benefit on Mrs. Campbell except by way of her

stockholder's share of returns derived by Appellant from the development of the leased land. The failure of consideration was total and more than meets the test. Where land has been conveyed in exchange for the defaulted performance and the damages are not readily ascertainable, cancellation of the deed is the appropriate remedy. 12 WILLISTON, CONTRACTS § 1456 (3d ed. 1970); *Benassi v. Harris, supra; Southern Colonization Co. v. Derfler,* 73 Fla. 924, 75 So. 790 (1917); *Savannah F. & W. Ry. Co. v. Atkinson,* 94 Ga. 780, 21 S.E. 1010 (1894).

Upon this analysis, we see no ground in the present record upon which Appellant can successfully attack the restitution ordered in this case, with the possible exception of the contention, which Appellant has advanced, that Appellant was prevented from performing its undertaking by the actions of Mrs. Campbell. On this issue, the findings of the trial court are somewhat ambiguous. It found that Appellant's efforts to complete an agreement with West Beach Development Corporation for a joint development "were not successful because it appears that the parties wished to deal directly with Mrs. Campbell." The court also found that Mrs. Campbell, at some unspecified time, commenced negotiations with West Beach Development Corporation for her own account and that her efforts were a continuation of those of Appellant. However, it is clearly implied in the court's findings that Mrs. Campbell became involved in these negotiations after Appellant was in default in the performance of its obligations and that Mrs. Campbell did not earlier frustrate the efforts of Appellant. We conclude that Appellant has not sustained the burden of showing that it was prevented by Mrs. Campbell from performing its undertaking.[1]

---

[1] The evidence cannot be interpreted more favorably to Appellant than as summarized in Appellant's brief: "The appellant showed by overwhelming evidence that its inability to perform was occasioned by the desire of the Trustees to have the property developed under their agreement with the West Beach group, and eventually the offer to Mrs. Campbell from that group was increased until she accepted it, in spite of her obligations to the defendant."

## II

We turn now to consideration of the trial court's denial of Appellant's motion to amend its answer. Appellant sought by the amendment to plead the following affirmative defenses:

1. Waiver by Mrs. Campbell by informing Roy Campos and others that she was satisfied with the transaction and their efforts.

2. Ratification by Mrs. Campbell by attendance at a meeting of Appellant's stockholders on October 27, 1970.

3. Estoppel as the result of Mrs. Campbell informing Roy Campos that she was satisfied with the efforts of Appellant and did not wish the agreement terminated or the leasehold property returned to her.

4. Laches by reason of delay in commencement of this action while having notice of the facts and acts of defendants set forth in the complaint.[2]

The motion to amend was filed by Appellant and the individual defendants more than 15 months after the answer was filed. It was accompanied by a memorandum setting forth evidence which the defendants proposed to offer in support of the affirmative defenses, from which it appeared that all of the facts upon which the defendants proposed to rely involved statements made and actions taken by Mrs. Campbell in the presence of the defendants and were known to them when the answer was filed. Appellee opposed the motion on the ground that the death of Mrs. Campbell had deprived Appellee of its only source of rebuttal testimony, which could have been preserved by deposition had the affirmative defenses been pleaded in the answer; and that the trial, then set for March 19, 1973, would be required to be

---

[2] We do not have occasion to consider whether denial of the amendment may be sustained upon the ground that these defenses were insufficient on their face as against Appellee's claim for restitution, the individual defendants having been dismissed. See 6 WRIGHT & MILLER. FEDERAL PRACTICE AND PROCEDURE; Civil § 1487 (1971); *Banque de Depots v. National Bank of Detroit*, 491 F.2d 753 (6th Cir. 1974); *Inland Container Corp. v. Atlantic Coast Line R.Co.*, 266 F.2d 857 (5th Cir. 1959).

delayed for Appellee to complete further discovery. Appellee also pointed out that Appellant had engaged in extensive discovery, in which Appellee had done nothing to develop the evidence on the new issue. No reasons were stated by the trial court in denying the motion. Appellant again moved, after the trial, to amend the answer to include certain affirmative defenses, but does not present in this appeal any question with respect to the denial of that motion.

Appellant's motion to amend was governed by Rule 15(a), H.R.C.P., which is identical with the same numbered rule of the Federal Rules of Civil Procedure. Rule 15(a) permits the requested amendment only by leave of court or consent of the adverse party, but admonishes that "leave shall be freely given when justice requires." The decisions of the Federal courts provide assistance in applying the rule here.

The United States Supreme Court has laid down the following general standard to be employed under Rule 15(a) by the Federal district courts:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." (*Foman v. Davis*, 371 U.S. 178, at 182).

The grant or denial of leave to amend under Rule 15(a) is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion. 6 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, Civil § 1484 (1971). In *Boris v. Moore*, 253 F.2d 523 (7th Cir. 1958), the plaintiffs were denied leave to amend their complaint to state a claim for affirmative relief against a defendant as to whom such relief had not previously been claimed. The motion to amend was made more than eight months after the answer had been filed, during which the one of the plain-

tiffs with whom the defendant had dealt directly in the questioned transactions had died. Prior to the death, the defendant had taken this plaintiff's deposition and had foregone the opportunity to question him about any claim for affirmative relief. Upon these facts, it was held that the trial judge had not abused his discretion in denying the motion to amend.

Cases involving undue delay in amending answers apply similar criteria. In *Albee Homes, Inc. v. Lutman,* 406 F.2d 11 (3rd Cir. 1969), the trial court's discretion was sustained in denying leave to amend a reply to a counterclaim in order to plead the affirmative defense of release, where the amendment was sought on the eve of trial over 3 years after the reply had been filed and there was no claim that the defense was not known then. In *Komie v. Buehler Corporation,* 449 F.2d 644 (9th Cir. 1971), which was an action for personal injuries in a boat accident, the defendants admitted in their answer and pretrial statement that the boat had been operated by their employee within the scope of his employment, and were denied leave to amend so as to withdraw these admissions. As in the present case, the trial court failed to state a reason for its ruling. In affirming, the appellate court said:

> Here there were "justifying" reasons which were readily apparent. The motion was made 31 months after the answer was filed, eleven months after the pretrial statement was signed, and more than six months after the case was set for trial. There had been extensive discovery, none of which had been directed to the question of agency by reason of the admission that Bechtel was Buehler's employee and acting within the scope of his employment. The proposed amendment was not based upon any facts which were not known or readily available to the defendants and their counsel, at least when the pretrial statement was signed. The motion to amend was made just three weeks before the trial date after Komie had agreed to settle with Belknap.
>
> Under these circumstances we cannot say that the district court abused its discretion in denying the motion to amend.

To similar effect, also see *Nevels v. Ford Motor Co.*, 439 F.2d 251 (5th Cir. 1971); *Inland Container Corp. v. Atlantic Coast Line R. Co.*, 266 F.2d 857 (5th Cir. 1959).

The delay and prejudice to which Appellee pointed in opposing Appellant's motion to amend its answer in the present case provided ample justifying reasons for the denial of the motion and no abuse of the trial court's discretion has been shown.

The judgment is affirmed.

*Helen B. Ryan (Ryan & Ryan* of counsel) for Defendant-Appellant.

*Edward J. Bybee (Rother, Grimes & Bybee* of counsel) for Plaintiff-Appellee.