**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000167
16-NOV-2020
08:08 AM
Dkt. 59 ORD**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

BERNET CARVALHO, Individually, and as
Personal Representative of the Estate of
ROYDEN KALAVI, Deceased, Plaintiffs-Appellants,
v.
AIG HAWAII INSURANCE COMPANY, INC.;
HAWAII INSURANCE CONSULTANTS, LTD.
Defendants-Appellees,

and

JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10;
AND ROE GOVERNMENTAL ENTITIES 1-10, Defendants

NO. CAAP-16-0000167

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 07-1-294K)

NOVEMBER 16, 2020

GINOZA, CHIEF JUDGE, LEONARD AND HIRAOKA, JJ.

OPINION OF THE COURT BY GINOZA, CHIEF JUDGE

Plaintiff-Appellant Bernet Carvalho, individually, and as personal representative of the Estate of Royden Kalavi, deceased, (**Plaintiff Carvalho**), appeals from the Judgment filed

on February 23, 2016, by the Circuit Court of the Third Circuit (**circuit court**)[1] in favor of Defendants-Appellees AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd. (**collectively AIG**).

In this appeal, Plaintiff Carvalho challenges the following interlocutory orders by the circuit court: (1) the "Order Granting Defendants AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd.'s Motion to Preclude Evidence and Argument re: Failure to Settle" (**Order Precluding Evidence**); (2) the "Order Denying Plaintiffs' Motion to Amend Complaint" (**Order Denying Motion to Amend Complaint**); (3) the "Order Denying Plaintiffs' Motion for Reconsideration, and/or Clarification, and in the Alternative, for Leave to File an Interlocutory Appeal pursuant to Hawaii Revised Statutes (**HRS**) § 641-1(b), of the Order Denying Plaintiffs' Motion to Amend Complaint" (**Order Denying Reconsideration**); and (4) the "Order Granting Defendants AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd.'s Motion for Summary Judgment as to all Remaining Claims and Causes of Action re: Lack of Causation" (**Order Granting AIG's MSJ**).

Plaintiff Carvalho contends the Judgment should be vacated because the circuit court: (1) abused its discretion in entering the Order Precluding Evidence where it precluded Plaintiff Carvalho from seeking or introducing relevant evidence on her claim for bad faith against AIG; (2) abused its discretion in entering the Order Denying Motion to Amend Complaint because Plaintiff Carvalho made a *prima facie* showing under Hawai‘i Rules of Civil Procedure (**HRCP**) Rule 15(a) and pertinent case law warranting leave to amend her complaint; (3) abused its discretion in entering the Order Denying Reconsideration because the motion was timely filed, and the circuit court refused Plaintiff Carvalho's request to provide specific guidance on the

---

[1] The Honorable Ronald Ibarra and Melvin H. Fujino presided over the relevant proceedings.

2

admissibility of evidence at trial; and (4) erred in entering the Order Granting AIG's MSJ in light of the Hawaiʻi Supreme Court's disfavor in granting summary judgment in fact-intensive insurance bad faith claim handling cases.

We conclude it was error for the circuit court to grant summary judgment and therefore we vacate the Judgment and the Order Granting AIG's MSJ, and remand the case to the circuit court. However, we affirm the Order Precluding Evidence, the Order Denying Motion to Amend Complaint, and the Order Denying Reconsideration.

## I. Background

On September 23, 2005, Plaintiff Carvalho's son, Royden Kalavi (**Royden**), was involved in a two-car automobile accident which resulted in his death. Royden was a passenger in a car operated by one of his friends. The other car and driver involved in the accident were uninsured. At the time of the accident, Royden was covered by an insurance policy purchased by his maternal grandparents, John and Barbara Carvalho (**the Carvalhos**), from AIG. After the accident, Plaintiff Carvalho made a claim to AIG for uninsured motorist (**UM**) and underinsured motorist (**UIM**) benefits available under the Carvalhos' AIG policy, asserting that Royden was covered as a "resident relative" of the Carvalhos. In response, AIG informed Plaintiff Carvalho that only non-stacked UM and UIM coverages totaling $70,000 were available to Royden under the Carvalhos' AIG policy.

On December 31, 2007, Plaintiff Carvalho filed the Complaint initiating the instant action against AIG seeking, *inter alia*, a declaratory judgment for increased and stacked UM and UIM insurance coverage totaling $1.2 million under the Carvalhos' AIG policy. The Complaint alleges further causes of action[2] premised on Plaintiff Carvalho's contention that AIG had

_____

[2] Plaintiff Carvalho's Complaint alleges seven "causes of action" against AIG: (1) Declaratory Judgment; (2) Negligence; (3) Breach of Contract and/or Contractual Warranties; (4) HRS Chapter 480, Unfair and/or Deceptive
(continued...)

refused to acknowledge the stacked UM and UIM coverages totaling $1.2 million that were available to her, and asserting that AIG failed to increase UM and UIM limits as instructed by John Carvalho on September 28, 2004, and failed to offer stacked or increased UM and UIM coverages given the "material change to an existing policy" doctrine adopted in <u>Allstate Ins. Co. v. Kaneshiro</u>, 93 Hawaiʻi 210, 221, 998 P.2d 490, 501 (2000).

In its February 21, 2008 answer, AIG acknowledged that prior to the accident, it had not increased the Carvalhos' UM and UIM coverages. AIG asserted, however, that prior to the filing of the Complaint, it did increase the Carvalhos' limits to "maximum available amounts of $300,000/[$300,000] each person, each accident stacked over two vehicles effective September 28, 2004." The record indicates that, in a letter dated February 19, 2008 (less than two months after the Complaint was filed), AIG informed Plaintiff Carvalho of its determination that the stacked maximum UM and UIM coverage limits under the Carvalho's policy was $1.2 million. This letter further stated: "However, the issue that remains to be resolved is the value of the wrongful death claim resulting from Royden's death which is being asserted against the UM/UIM coverage."

On March 11, 2008, AIG filed a motion requesting that the circuit court stay the instant case pending the resolution of a separate declaratory judgment action filed by AIG against, *inter alia*, Plaintiff Carvalho, the Carvalhos, and Hesekaia Kalavi (**Kalavi**), Royden's father. The declaratory judgment action was initiated by AIG to determine whether Royden was

---

[2](...continued)
Trade Practices Violations; (5) Breaches of Covenant of Good Faith and Fair Dealing; (6) Negligent and/or Intentional Infliction of Emotional Distress; and (7) Punitive Damages. We note the assertion for punitive damages is not an independent tort, but is incidental to a separate cause of action. <u>Ross v. Stouffer Hotel Co. (Hawaiʻi)</u>, 76 Hawaiʻi 454, 466, 879 P.2d 1037, 1049 (1994) (citation omitted). Plaintiff Carvalho's prayer for relief seeks declaratory relief for coverage of $1.2 million under the Carvalhos' AIG policy, special damages, general damages, treble/punitive/exemplary damages, attorneys' fees and costs, and prejudgment interest.

covered under the Carvalhos' AIG policy or Kalavi's AIG policy.[3] The circuit court entered an order granting AIG's request to stay this case on April 15, 2008.

On July 16, 2008, AIG's declaratory judgment action was resolved via a stipulated judgment, whereby it was determined that Royden was covered under the Carvalhos' AIG policy but not under Kalavi's AIG policy. Once the AIG declaratory judgment action was resolved, the parties submitted to private UM/UIM Arbitration to resolve the value of the loss sustained by Royden's estate, Plaintiff Carvalho and Kalavi.[4] On September 9, 2008, by stipulation of the parties, the circuit court issued an order continuing the previously issued stay "until said arbitration is finally concluded or until otherwise ordered by the Court."

On April 2, 2009, an arbitration award was issued to Royden's estate, and his surviving parents Plaintiff Carvalho and Kalavi, totaling $3 million in damages (with no deductions for any other insurance).[5] In the arbitration award, Royden's estate was awarded $500,000, Plaintiff Carvalho was awarded $1.25 million, and Kalavi was awarded $1.25 million. On April 29, 2009, AIG transmitted $1.2 million to Plaintiff Carvalho in payment of the combined UM and UIM policy limits under the Carvalhos' policy. Pursuant to the circuit court's prior order,

---

[3] In its motion for stay, AIG alleged the basis for the separate declaratory action was that Royden's estate had initially made a claim for UM and UIM benefits under Kalavi's AIG policy, that Kalavi had given sworn testimony that in the six months before the accident Royden stayed with Kalavi and his family on the weekends, but that a claim was later made under the AIG policy issued to the Carvalhos with the estate's counsel asserting that Royden stayed with the Carvalhos on the weekends.

[4] The Carvalhos' AIG policy provided for arbitration if the parties did not agree on "the amount of damages" which the covered persons were entitled to recover from an uninsured or underinsured motorist.

[5] According to correspondence by counsel for Royden's estate dated February 20, 2008, Royden's estate had previously recovered a total of $140,000 from the insurer of the car in which Royden was a passenger, Plaintiff Carvalho's own UM/UIM insurer, and the UM/UIM insurer of Plaintiff Carvalho's sister, who lived with Plaintiff Carvalho.

the stay of the instant case was presumably lifted on April 2, 2009, the day the arbitration award was issued.

For reasons unclear in the record, this case remained dormant for a number of years following the arbitration award, until the circuit court filed a Notice of Status Hearing on November 1, 2013. On June 25, 2014, Plaintiff Carvalho filed a Notice of Trial Setting Status Conference, indicating her intent to set the case for trial. The circuit court then set a trial date of January 12, 2016, and set all pretrial deadlines, including a discovery cut-off date of November 13, 2015.

On June 12, 2015, AIG filed "Defendants AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd.'s Motion to Preclude Evidence and Argument re: Failure to Settle" (**Motion to Preclude Evidence**). In its motion, AIG sought an order from the circuit court "precluding any and all evidence and argument from being presented to the jury at the time of trial in furtherance of [Plaintiff Carvalho's] unpled claim that [AIG] somehow breached a duty to settle the underlying UM and UIM claim . . . prior to the issuance of the UM/UIM Arbitration Award." AIG's motion was apparently brought in response to a settlement conference statement filed by Carvalho on February 6, 2015,[6] and a discovery request on or around June 8, 2015, which made reference to what AIG characterized as a previously unpled claim that AIG had acted in bad faith for its failure to tender the policy limits to Plaintiff Carvalho prior to the UM/UIM arbitration award.

On August 10, 2015, Plaintiff Carvalho filed a motion to amend her Complaint. At that point, trial was scheduled to

---

[6] February 6, 2015 is the ex officio filing date. Various documents in this case were filed ex officio. See HRS § 606-1(b) (2016 Repl.) ("The respective clerks of the supreme court, intermediate appellate court, circuit courts, and district courts shall be ex officio clerks of all the courts of records, and as such may issue process returnable in all such courts."); Rules of the Circuit Courts of the State of Hawaiʻi, Rule 2.1. ("The respective clerks of the circuit courts shall be ex officio clerks of all the courts of record and as such may accept documents for filing and may issue summons returnable in all such courts.").

commence five months later, on January 12, 2016, and the discovery cut-off was in November 2015. Although Plaintiff Carvalho's proposed First Amended Complaint did not seek to add further causes of action, it sought to add extensive factual allegations, with the proposed First Amended Complaint expanding to forty-five pages compared to the original Complaint's fifteen pages, and sought to include assertions that AIG "deliberately, deceptively, unfairly, and/or in bad faith unreasonably delayed their payment of $1.2 million in UM and UIM benefits to [Plaintiff Carvalho] from at least on or about April 16, 2007 until after the April 2, 2009 Arbitration Award was issued[.]"

Two days later, the circuit court orally granted AIG's Motion to Preclude Evidence. The circuit court granted AIG's motion "based on the state of the pleadings" at the time of the hearing, noting specifically that it had not yet considered Carvalho's motion to amend her Complaint. The circuit court noted, however, that it may reconsider its holding on AIG's Motion to Preclude Evidence if it were to subsequently grant Plaintiff Carvalho's motion to amend her Complaint, assuming the proposed amended complaint incorporated the previously unpled assertions.[7]

On October 15, 2015, the circuit court entered its Order Denying Motion to Amend Complaint, which states the motion was denied "as the Court finds undue delay."[8] On November 23, 2015, more than thirty days after the circuit court filed its Order Denying Motion to Amend Complaint, Plaintiff Carvalho filed "Plaintiff's Motion for Reconsideration, and/or clarification, and in the alternative, for leave to file an interlocutory appeal pursuant to HRS § 641-1(b), of the Order Denying Plaintiffs' Motion to Amend Complaint" (**Motion for Reconsideration**). On the

---

[7] The Honorable Melvin H. Fujino presided regarding Plaintiff Carvalho's Motion to Preclude Evidence and entered the corresponding order, which was filed on September 2, 2015.

[8] The Honorable Melvin H. Fujino presided regarding Plaintiff Carvalho's motion to amend complaint, and entered the corresponding order.

same day, AIG filed "Defendants AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd.'s Motion for Summary Judgment as to all Remaining Claims and Causes of Action re: Lack of Causation" (**AIG's MSJ**).

On January 5, 2016, the circuit court entered its Order Denying Reconsideration and Order Granting AIG's MSJ.[9]  The Judgment was thereafter entered on February 23, 2016.

## II.  Standards of Review

### A.  Motion for Summary Judgment

"This court reviews a circuit court's grant or denial of summary judgment *de novo*."  Enoka v. AIG Hawaii Ins. Co., Inc., 109 Hawaiʻi 537, 543, 128 P.3d 850, 856 (2006).  It is well settled that:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.  The evidence must be viewed in the light most favorable to the non-moving party.  In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 543-44, 128 P.3d at 856-57 (brackets and citation marks omitted).

### B.  AIG's Motion to Preclude Evidence

As discussed *infra*, we construe AIG's Motion to Preclude Evidence as a motion in limine.

> The granting or denying of a motion in limine is reviewed for abuse of discretion.  The denial of a motion in limine, in itself, is not reversible error.  The harm, if any, occurs when the evidence is improperly admitted at trial.  Thus, even if the trial court abused its discretion in denying a party's motion, the real test is not in the disposition of the motion but the admission of evidence at trial.

Kobashigawa v. Silva, 129 Hawaiʻi 313, 320, 300 P.3d 579, 586 (2013).

_____

[9]  The Honorable Ronald Ibarra presided regarding Plaintiff Carvalho's Motion for Reconsideration and AIG's MSJ, and entered the corresponding orders.

C.    **Plaintiff Carvalho's Motion to Amend Complaint**

"This court reviews a denial of leave to amend a complaint under HRCP Rule 15(a) or (b) under the abuse of discretion standard."  Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawaiʻi 92, 104, 176 P.3d 91, 103 (2008) (citations omitted).  See also Seki ex rel. Louie v. Hawaii Gov't Emps. Ass'n, AFSCME Local No. 152, AFL-CIO, 133 Hawaiʻi 385, 400, 328 P.3d 394, 409 (2014).

> The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.  Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

Kamaka, 117 Hawaiʻi at 104, 176 P.3d at 103 (citation omitted).

D.    **Motion for Reconsideration**

"The trial court's ruling on a motion for reconsideration is reviewed under the abuse of discretion standard."  Id. (citation omitted).  It is also well established that:

> the purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion.  Reconsideration is not a device to relitigate old matters or to raise arguments or evidence that could and should have been brought during the earlier proceeding.

Id. (citation and internal quotation marks omitted).

### III.  Discussion

A.    **The circuit court erred in granting summary judgment for AIG**

We first address Plaintiff Carvalho's contention that the circuit court erred in its Order Granting AIG's MSJ.  On appeal, Plaintiff Carvalho asserts that the circuit court erred because: (1) it disregarded all applicable summary judgment case law; (2) it disregarded the conflicting evidence on causation and damages; and (3) AIG had known in 2007 of its obligations to promptly handle Plaintiff Carvalho's UM and UIM claims in good faith.

In response, AIG asserts that while there may have been a genuine issue of material fact as to whether AIG had acted in bad faith in failing to initially acknowledge the increased UM/UIM policy limits and as to the amount of damages sustained by Plaintiff Carvalho, summary judgment was appropriate because Plaintiff Carvalho could not establish that she incurred any damages as a result of AIG's conduct. Specifically, AIG asserts that Plaintiff Carvalho could not establish that she had incurred any damages as of February 19, 2008, the date that AIG by letter recognized the increased UM/UIM policy limits, where it was not until five months later that it was determined that Plaintiff Carvalho was entitled to recover under the Carvalhos' AIG insurance policy in AIG's separate declaratory judgment action, and it was not until April 2, 2009, that the arbitrator determined the amount of damages that Royden's estate, Plaintiff Carvalho, and Kalavi sustained because of Royden's death.

It is established Hawaiʻi law that there is a legal duty implied in a first-party insurance contract that "the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action." Miller v. Hartford Life Ins. Co., 126 Hawaiʻi 165, 174, 268 P.3d 418, 427 (2011) (citing Best Place, Inc. v. Penn America Ins. Co., 82 Hawaiʻi 120, 132, 920 P.2d 334, 346 (1996)). Such duty is independent of the insurer's contractual duty to pay claims. Id.

In Enoka, the Hawaiʻi Supreme Court held that an insured can maintain a claim against an insurer for bad faith mishandling of the insured's claim even where the insurer had no contractual duty to pay any benefits. 109 Hawaiʻi at 549-52, 128 P.3d at 862-65. The supreme court stated:

> Surely an insurer must act in good faith in dealing with its insured and in handling the insured's claim, even when the policy clearly and unambiguously excludes coverage. Inasmuch as Enoka has alleged that AIG handled the denial of her claim for no-fault benefits in bad faith, we conclude that she is not precluded from bringing her bad faith claim even where there is no coverage liability on the underlying policy. Accordingly, we hold that the trial court erred in

10

> determining that, because Enoka's breach of contract claim failed, her bad faith claim must fail.

Id. at 552, 128 P.3d at 865 (emphasis added).

Further, in Miller, the Hawaiʻi Supreme Court answered a certified question from the U.S. District Court for the District of Hawaiʻi by holding: "If a first-party insurer commits bad faith, an insured need not prove that the insured suffered economic or physical loss caused by the bad faith in order to recover emotional distress damages caused by the bad faith." 126 Hawaiʻi at 179, 268 P.3d at 432 (emphasis in original). The supreme court had explained that:

> In summary, Best Place and our subsequent case law evidence an intent to provide the insured with a vehicle for compensation for all damages incurred as a result of the insurer's misconduct, including damages for emotional distress, without imposing a threshold requirement of economic or physical loss. Best Place, 82 Hawaiʻi at 132, 920 P.2d at 346.

Id. at 176, 268 P.3d at 429 (emphasis added). The supreme court further expressed its view that "the basis for an insured's first-party bad faith claim is the insurer's conduct in breaching its duty to deal with its insured in good faith, not the insured's ultimate financial liability." Id. at 178, 268 P.3d at 431. It was noted, however, that "[w]hile economic loss is not required to recover for emotional distress in this context, nevertheless the existence of such loss, or lack thereof, could be relevant to determining the amount of damages recoverable." Id. at 178 n.17, 268 P.3d at 421 n.17.

Applying these principles here, we conclude the circuit court erred in granting AIG's MSJ on the basis argued by AIG. As explained in Enoka, Plaintiff Carvalho could maintain her bad faith mishandling claim even assuming AIG had no contractual duty to pay any benefits to her. See Enoka, 109 Hawaiʻi at 552, 128 P.3d at 865. Further, Plaintiff Carvalho is not required to prove that she suffered economic loss caused by AIG's alleged bad faith in order to recover emotional distress damages caused by

11

AIG's alleged bad faith, which she sought in her Complaint.[10]
See Miller, 126 Hawaiʻi at 179, 268 P.3d at 432.  Accordingly,
contrary to AIG's argument, summary judgment was not appropriate
on the basis that AIG's February 19, 2008 letter had acknowledged
the increased UM/UIM policy limits, before it was determined in
the separate declaratory action that Royden was covered under the
Carvalhos' AIG policy, and that it was not until April 2, 2009,
that the arbitrator determined that Royden's estate, Plaintiff
Carvalho, and Kalavi sustained damages totaling $3 million
because of Royden's death.  In short, AIG's obligation to act in
good faith is independent from its contractual obligation to
tender benefits to the insured.  As the Hawaiʻi Supreme Court has
stated:

> In Best Place, we held that "there is a legal duty,
> implied in a first- and third-party insurance contract, that
> the insurer must act in good faith in dealing with its
> insured, and a breach of that duty of good faith gives rise
> to an independent tort cause of action."  82 Hawaiʻi at 132,
> 920 P.2d at 346.  "The implied covenant is breached, whether
> the carrier pays the claim or not, when its conduct damages
> the very protection or security which the insured sought to
> gain by buying insurance."  Id. (quoting Rawlings v.
> Apodaca, 151 Ariz. 149, 726 P.2d 565, 573 (1986)). . . .
> [F]ailure to pay a claim is not a *sine qua non* of a
> cognizable cause of action for bad faith.

Catron v. Tokio Marine Mgmt., Inc., 90 Hawaiʻi 407, 410, 978 P.2d
845, 848 (1999).

The Hawaiʻi Supreme Court has expressed that the
question of whether an insurer has acted in bad faith is
generally a question of fact.  Willis v. Swain, 129 Hawaiʻi 478,
496, 304 P.3d 619, 637 (2013).  "[R]easonableness can only
constitute a question of law suitable for summary judgment when
the facts are undisputed and not fairly susceptible of divergent
inferences, because, where, upon all the evidence, but one
inference may reasonably be drawn, there is no issue for the
jury."  Id. (citation and internal quotation marks omitted).

---

[10]  As previously noted, one cause of action alleged by Plaintiff
Carvalho in her Complaint was negligent and/or intentional infliction of
emotional distress, for which she sought damages.

Given the applicable standards, we conclude that AIG failed to establish, as a matter of law, that the only inference to be reasonably drawn from the record was that AIG had reasonably handled Plaintiff Carvalho's claim for UM/UIM benefits.

AIG concedes in its answering brief that there were genuine issues of material fact on the merits of the underlying claim, which in our view are relevant to the bad faith claim, *i.e.*, whether AIG acted reasonably in initially declining to raise and stack the UM/UIM policy limits or to initially acknowledge the increased limits. Plaintiff Carvalho had produced in her opposition to AIG's MSJ, *inter alia*, portions of AIG's claim diary which indicated that AIG may have internally recognized that Plaintiff Carvalho could be entitled to the $1.2 million in stacked UM/UIM coverages as early as April 2007. Accordingly, because Plaintiff Carvalho was entitled to maintain her bad faith mishandling claim against AIG and, viewing the facts and inferences therefrom in the light most favorable to Plaintiff Carvalho, genuine issues of material fact exist as to whether AIG acted in bad faith in regard to offering and determining the available UM and UIM coverage and initially refusing to acknowledge that the Carvalhos' AIG policy should have provided a total of $1.2 million in stacked UM and UIM coverage. Accordingly, summary judgment on the bad faith claim was not appropriate.

We thus conclude that the circuit court erred in granting AIG's MSJ. For purposes of the remand, we also address the remaining points of error below.

**B.  The circuit court did not abuse its discretion in granting AIG's Motion to Preclude Evidence**

We next address Plaintiff Carvalho's contention that the circuit court abused its discretion in granting AIG's Motion to Preclude Evidence. On appeal, Plaintiff Carvalho asserts that AIG's motion was an improper form of a motion in limine that precluded her from introducing relevant evidence at trial and

summarily dismissed a portion of her claim. While we agree with Plaintiff Carvalho to the extent that AIG's Motion to Preclude Evidence constituted a motion in limine, for the following reasons we conclude that the circuit court did not abuse its discretion in entering its Order Precluding Evidence.

AIG's Motion to Preclude Evidence sought an order "precluding any and all evidence and argument from being presented to the jury at the time of trial in furtherance of [Plaintiff Carvalho's] unpled claim that [AIG] somehow breached a duty to settle the underlying UM and UIM claim . . . prior to the issuance of the UM/UIM Arbitration Award." We construe AIG's Motion to Preclude Evidence as a motion in limine, inasmuch as it was used as "a procedural device which requests a pretrial order enjoining opposing counsel from using certain prejudicial evidence in front of a jury at a later trial." See Kobashigawa, 129 Hawaiʻi at 321, 300 P.3d at 587. However, we conclude that the circuit court did not abuse its discretion in its Order Precluding Evidence because it appropriately prohibited Plaintiff Carvalho from introducing evidence not related to her Complaint.

As previously mentioned, Plaintiff Carvalho's Complaint was premised on her allegation that AIG had initially failed to recognize the increased stacked UM/UIM policy limits due under the Carvalhos' AIG policy. Nowhere in Plaintiff Carvalho's Complaint does she make a claim that AIG had acted in bad faith for failing to settle the instant case prior to the issuance of the arbitration award. Plaintiff Carvalho's motion to amend her Complaint also was not before the circuit court at the time it ruled on AIG's Motion to Preclude Evidence. As such, it was well within the circuit court's discretion to grant AIG's motion to exclude any evidence pertaining to this unpled claim from being presented at trial. See id., at 322, 30 P.3d at 588 (noting that "the granting or denying of a motion in limine is within the trial court's inherent power to exclude and admit evidence"); cf. Cresencia v. Kim, 10 Haw. App. 461, 476-77, 878 P.2d 725, 734

14

(1994) (discussing without criticism the circuit court's grant of a motion in limine to exclude evidence related to claims not properly pled in complaint). Likewise, the circuit court's Order Precluding Evidence could not have summarily dismissed any claim that AIG had acted in bad faith for failure to settle because no such claim was asserted in Plaintiff Carvalho's Complaint.

As noted by the circuit court at the August 12, 2015 hearing on the Motion to Preclude Evidence, the court had granted the motion "based on the state of the pleadings," specifically noting that no motion to amend a complaint was before the court at that time. Accordingly, as there was no assertion in the Complaint that AIG had acted in bad faith in failing to settle Plaintiff Carvalho's claim prior to the arbitration award, it cannot be said that the circuit court abused its discretion in entering its Order Precluding Evidence.

**C.  The circuit court did not abuse its discretion in its Order Denying Motion to Amend Complaint**

We next address Plaintiff Carvalho's point of error asserting the circuit court erred in denying her motion to amend her Complaint. Plaintiff Carvalho contends that the circuit court abused its discretion in denying her motion because she had made a *prima facie* showing under HRCP Rule 15(a) and pertinent case law that she was entitled to amend her Complaint.

As noted by the Hawaiʻi Supreme Court, "unless there is an apparent reason indicating otherwise, under HRCP Rule 15(a), leave to amend shall be freely given to a party to amend its complaint when justice so requires." Dejetley v. Kahoʻohalahala, 122 Hawaiʻi 251, 269, 226 P.3d 421, 439 (2010) (citation and internal quotation marks omitted). The Hawaiʻi Supreme Court has further explained that

> in the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as HRCP Rule 15(a) requires, be freely given.

15

Kamaka, 117 Hawaiʻi at 112, 176 P.3d at 111 (citation, brackets, and quotation marks omitted) (affirming an order denying a motion to amend complaint because the trial court had justifiable reasons for denying the motion); Gonsalves v. Nissan Motor Corp. in Hawaii, Ltd., 100 Hawaiʻi 149, 160, 58 P.3d 1196, 1207 (2002); Hirasa v. Burtner, 68 Haw. 22, 26, 702 P.2d 772, 775 (1985); Bishop Trust Co., Ltd. v. Kamokila Dev. Corp., 57 Haw. 330, 337, 555 P.2d 1193, 1198 (1976) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  Thus, while leave to amend pleadings is to be freely given, undue delay and prejudice provide justifying reasons to deny leave to amend under HRCP Rule 15(a).

Upon review of the record and arguments of the parties, it appears that reasonable minds could differ as to whether Plaintiff Carvalho was entitled to amend her Complaint pursuant to HRCP Rule 15(a).  On one hand, the motion was filed approximately three months prior to the discovery cut-off date and five months prior to trial, which was by no means prompt, but not as late into the court deadlines as other cases where our appellate courts have determined undue delay provided justifiable reason to deny a request to amend a complaint or answer.  See Kamaka, 117 Hawaiʻi at 111-12, 176 P.3d at 110-111 (affirming circuit court's denial of leave to amend complaint where hearing on motion to amend was held two weeks prior to trial, and motion was filed seven days after discovery deadline and nearly four years after pre-trial statement referring to unpled claims had been filed); Bishop Trust Co., 57 Haw. at 336-38, 555 P.2d at 1197-99 (holding undue delay and prejudice provided ample justifying reasons to deny motion to amend answer that was filed less than two months before trial, which would likely require trial to be delayed to complete further discovery on previously unpled issues); Arthur v. State, Dept. Of Hawaiian Home Lands, 135 Hawaiʻi 149, 169, 346 P.3d 218, 238 (App. 2015), *vacated on other grounds*, 138 Hawaiʻi 85, 377 P.3d 26 (2016) (reasoning there was undue delay where plaintiff sought to name new

16

defendant in amended complaint more than four years after that defendant had been named in a third-party complaint, three weeks before the discovery deadline, and where allowing the amendment likely would require further discovery for the new claims).

On the other hand, the circuit court had justifiable reasons to deny Plaintiff Carvalho's motion because she had waited multiple years to request leave to amend her Complaint, and her motion was based on information that she had access to since 2008.  See Keawe v. Hawaiian Elec. Co., Inc., 65 Haw. 232, 238-39, 649 P.2d 1149, 1154 (1982) (holding circuit court had not abused its discretion in denying leave to amend complaint where moving party chose to wait four years to amend its complaint and made a conscious choice as to the exclusiveness of its claim despite being fully cognizant of other grounds for remedy); Bishop Trust Co., 57 Haw. at 336-38, 555 P.2d at 1197-98 (finding undue delay and prejudice where motion to amend answer was filed more than fifteen months after the original answer was filed and relied on statements and actions taken by deceased declarant that were known to moving party when the original answer was filed, thus inhibiting non-moving party's ability to preserve rebuttal testimony); Yoneji v. Yoneji, 137 Hawaiʻi 299, 318, 370 P.3d 704, 723 (App. 2016) (holding that the circuit court did not abuse its discretion in denying leave to amend complaint for undue delay where moving party did not file its motion until a week before trial and failed to provide any evidence of when they had obtained information relevant to amended pleading).

Here, Plaintiff Carvalho's motion to amend was filed approximately seven and a half years after her Complaint had been filed, more than six years after the UM/UIM Arbitration award was issued and the stay in this case had expired, and almost one and a half years after she had filed her pretrial statement, which made no reference or mention of the previously unpled allegations.  Also, Plaintiff Carvalho has stated, both to the circuit court and now on appeal, that the additional factual

17

allegations alleged in her proposed First Amended Complaint were based on the claim handling conduct documented in AIG's claim file documents that AIG had produced in discovery on May 1, 2008, and correspondence between her counsel and AIG's counsel. This indicates that Plaintiff Carvalho was aware of the circumstances pertaining to her proposed amended complaint as early as 2008, and yet chose not to request leave to amend her Complaint until multiple years after the arbitration award was issued and the stay in this case had expired.

As the record indicates that there were justifiable reasons for the circuit court to deny Plaintiff Carvalho's motion to amend her Complaint for undue delay, it cannot be said that the circuit court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of Plaintiff Carvalho in entering its Order Denying Motion to Amend Complaint. See Kamaka, 117 Hawaiʻi at 104, 111-12, 176 P.3d at 103, 110-11; Keawe, 65 Haw. at 238-39, 649 P.2d at 1154; Bishop Trust Co., 57 Haw. at 338, 555 P.2d at 1198-99; Yoneji, 137 Hawaiʻi at 318, 370 P.3d at 723.[11]

**D.    The circuit court did not abuse its discretion in its Order Denying Reconsideration**

We finally address Plaintiff Carvalho's point of error asserting the circuit court erred in denying her Motion for Reconsideration. In her motion, Plaintiff Carvalho requested that the circuit court: (1) vacate its Order Denying Motion to Amend Complaint at least in part to allow the use of certain

---

[11]    While both parties present arguments as to whether Plaintiff Carvalho was time-barred by the statute of limitations prescribed under HRS § 431:10C-315 to amend her Complaint, the circuit court's Order Denying Motion to Amend Complaint was explicitly denied solely on the basis of undue delay. Because Plaintiff Carvalho's motion to amend was not denied on the basis of statute of limitations, and in light of our holding that the circuit court did not abuse its discretion for finding undue delay, we need not address the statute of limitation issue. We further note Plaintiff Carvalho asserts the circuit court should have allowed her leave to file supplemental pleadings under HRCP Rule 15(d), but she fails to cite where in the record she requested such leave from the circuit court. Thus, that contention is deemed waived. See Lales v. Wholesale Motors Co., 133 Hawaiʻi 332, 343 n.9, 328 P.3d 341, 352 n.9 (2014).

evidence referenced in her proposed First Amended Complaint; and/or (2) explain and clarify the circuit court's intent in denying her motion to amend with respect to the evidence that she would be allowed to present at trial; or (3) grant her leave pursuant to HRS § 641-1(b) (2016), to file an interlocutory appeal of the Order Denying Motion to Amend Complaint.

The circuit court denied the Motion for Reconsideration because it found that Plaintiff Carvalho did not introduce any new matter or evidence that could not have been presented to the judge presiding over the Order Denying Reconsideration, and as to the alternative request for leave to file an interlocutory appeal, the petition was untimely made because it was filed more than thirty days after the Order Denying Motion to Amend Complaint was entered.  On appeal, Plaintiff Carvalho contends that the circuit court abused its discretion in denying her Motion for Reconsideration because: (1) her request for leave to file an interlocutory appeal of the Order Denying Motion to Amend Complaint was timely; (2) the circuit court failed to provide guidance as to what evidence would be allowed at trial; and (3) she had provided new information not previously available to the court in its prior rulings.

**1.    Plaintiff Carvalho's request for leave to file an interlocutory appeal was untimely**

We conclude that Plaintiff Carvalho's request for leave to file an interlocutory appeal in her Motion for Reconsideration was untimely.  The Supreme Court of Hawaiʻi interpreted an earlier version of Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 4(a)(1) (1987),[12] along with HRS § 641-1(b) (2016),[13] as

---

[12]   The 1987 version of HRAP Rule 4(a)(1) applicable in <u>King v. Wholesale Produce Dealers Ass'n of Hawaii</u>, 69 Haw. 334, 335, 741 P.2d 721, 722 (1987) stated:

> In a civil case in which an appeal is permitted by law as of right from a court or agency or by an order of a court granting an interlocutory appeal or by a Rule 54(b), HRCP or DCRCP, certificate from the court appealed from, the notice of appeal required by Rule 3 shall be filed by a party with
> (continued...)

requiring "a party wanting to take an interlocutory appeal to move for an order allowing the appeal, for the court to enter the order and for the appellant to file the notice of appeal all within 30 days from the filing of the order appealed from, unless the time for appeal is extended[.]" <u>King v. Wholesale Produce Dealers Ass'n of Hawaii</u>, 69 Haw. 334, 335, 741 P.2d 721, 722 (1987), *abrogated on other grounds by* <u>Jenkins v. Cades Schutte Fleming & Wright</u>, 76 Hawaiʻi 115, 869 P.2d 1334 (1994); <u>see also Kohala Agriculture v. Deloitte & Touche</u>, 86 Hawaiʻi 301, 311, 949 P.2d 141, 151 (App. 1997). The version of HRAP Rule 4(a)(1) applicable in this case is somewhat different than in <u>King</u>, but still required that "[w]hen a civil appeal is permitted by law, <u>the notice of appeal shall be filed within 30 days after entry of the</u> judgment or <u>appealable order</u>." HRAP Rule 4(a)(1) (2015)(emphasis added). Thus, the holding in <u>King</u> as to interlocutory appeals remained applicable in this case.[14]

---

[12](...continued)
the clerk of the court or agency appealed from within 30 days after the date of entry of the judgment or order appealed from.

[13] The current version of HRS § 641-1(b) remains the same as in 1987. This provision states:

(b) Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

[14] We note that effective July 1, 2016, after the relevant dates in this appeal, HRAP Rule 4(a)(1) was amended to add the following language which specifically addresses motions in circuit court requesting interlocutory appeal:

A motion for leave to file an interlocutory appeal from an order of the circuit court must be filed within 30 days of the court's entry of the order. If such a motion is filed and granted, then the notice of appeal shall be filed within 30 days after entry of the circuit court's order granting permission for leave to file an interlocutory appeal.

Here, the Order Denying Motion to Amend Complaint was filed on October 15, 2015. Plaintiff Carvalho filed her Motion for Reconsideration on November 23, 2015, which was already beyond the thirty days, as articulated in <u>King</u>, within which she was required to have filed her motion for interlocutory appeal, obtained a court order allowing the interlocutory appeal, and to have filed an appeal. Accordingly, the circuit court did not abuse its discretion in denying Plaintiff Carvalho's request for leave to file an interlocutory appeal from the Order Denying Motion to Amend Complaint.

> **2. The circuit court did not abuse its discretion in not providing guidance on evidentiary issues in its Order Denying Reconsideration**

Plaintiff Carvalho also asserts that the circuit court abused its discretion in entering its Order Denying Reconsideration by failing to provide guidance on what evidence the court would allow at trial. In her Motion for Reconsideration, Plaintiff Carvalho appeared to seek clarification as to whether she would be allowed to present evidence and argument pertaining to AIG's delay in payment of the UM and UIM benefits in 2008-2009, in light of the circuit court's Order Precluding Evidence and Order Denying Motion to Amend Complaint.

As pointed out by the circuit court at the December 16, 2015 hearing on the Motion for Reconsideration, the Order Denying Motion to Amend Complaint, from which Plaintiff Carvalho sought reconsideration, did not relate to or resolve any evidentiary issues. As such, the evidentiary issues which Plaintiff Carvalho sought to have clarified were not pertinent to the circuit court's determination on her Motion for Reconsideration. Instead, those issues were more appropriately resolved at trial, or in a prior motion in limine as the circuit court indicated at the hearing. Accordingly, the circuit court did not abuse its discretion in deciding not to rule on any evidentiary matters in its Order Denying Reconsideration.

21

   3.   **There was no new information or evidence that could not have been previously presented to the circuit court**

"The purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented during the earlier adjudicated motion."  Omerod v. Heirs of Kaheananui, 116 Hawaiʻi 239, 270, 172 P.3d 983, 1014 (2007) (brackets and citations omitted).  The only new evidence that Plaintiff Carvalho submitted in support of her Motion For Reconsideration was a report (**the Souza Report**) prepared by her insurance bad faith claim handling expert, Bill Souza (**Souza**), dated September 12, 2015.  Plaintiff Carvalho, however, fails to explain or address why this report could not have been produced at the time of her August 10, 2015 motion to amend her Complaint.  Accordingly, because this evidence could and should have been submitted by Plaintiff Carvalho in support of her motion to amend her Complaint, it cannot be said that the circuit court abused its discretion in denying her Motion for Reconsideration.  See Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114-15, 839 P.2d 10, 27 (1992).

                          **IV.   Conclusion**

        For the reasons discussed above, we vacate the: (1) "Order Granting Defendants AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd.'s Motion for Summary Judgment as to all Remaining Claims and Causes of Action re: Lack of Causation," entered on January 5, 2016; and (2) the "Judgment" entered on February 23, 2016, both entered by the Circuit Court of the Third Circuit.

        The following orders entered by the Circuit Court of the Third Circuit are affirmed:

        (1) The "Order Granting Defendants AIG Hawaii Insurance Company, Inc. and Hawaii Insurance Consultants, Ltd.'s Motion to Preclude Evidence and Argument re: Failure to Settle", entered on September 2, 2015.

(2) The "Order Denying Plaintiffs' Motion to Amend Complaint," entered on October 15, 2015.

(3) The "Order Denying Plaintiffs' Motion for Reconsideration, and/or Clarification, and in the Alternative, for Leave to File an Interlocutory Appeal pursuant to HRS § 641-1(b), of the Order Denying Plaintiffs' Motion to Amend Complaint," entered on January 5, 2016.

We remand this case to the circuit court for proceedings consistent with this opinion on the claims asserted in the Complaint.

On the briefs:

Arthur Y. Park,
Patricia Kim Park,
John C. McLaren,
(Park & Park)
for Plaintiffs-Appellants.

Steven L. Goto,
(Chong, Nishimoto, Sia,
Nakamura & Goya, LLP)
for Defendants-Appellees.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge