**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000648
30-JUN-2021
08:02 AM
Dkt. 116 MO**

NO. CAAP-17-0000648

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

MARK FUKUDA, Plaintiff-Appellant, v.
TOYOTARO NAKADA; SONIA NAKADA, also known as SONIA ROSA;
NITTO TSUSHINKI CO., LTD., a Japan Corporation,
formerly Sollen Corporation, Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10;
DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10;
and DOE GOVERNMENTAL ENTITIES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-0940-05 (CASE NO. 1CC101000940))

MEMORANDUM OPINION
(By: Ginoza, C.J., and Wadsworth and Nakasone, JJ.)

Plaintiff-Appellant Mark Fukuda (**Fukuda**), self-represented, appeals from the September 12, 2017 Final Judgment, entered by the Circuit Court of the First Circuit (**Circuit Court**),[1] in favor of Defendants-Appellees Toyotaro Nakada (**Toyotaro**), Sonia Nakada, also known as Sonia Rosa (**Sonia**), and Nitto Tsushinki Co., Ltd., formerly Sollen Corporation (**NTC**) (collectively, the **Nakada Defendants**), as to all claims asserted in Fukuda's July 31, 2013 First Amended Complaint.[2]  Fukuda also challenges the Circuit Court's:  (1) August 9, 2017 "Order Denying Plaintiff's Motion to Enter and Serve Plaintiff's Second Amended Complaint Filed November 6, 2016" (**Order Denying Motion**

_____

[1]     The Honorable Gary W.B. Chang presided.

[2]     The Final Judgment also dismissed any and all other remaining claims, which included any claims asserted against former Defendant Anthony Daniel (**Daniel**), who was dismissed from the case on June 27, 2017.

**for Leave to File Second Amended Complaint**); (2) August 22, 2017 "Order Granting [the Nakada] Defendants' Motion for Judgment on the Pleadings and Dismissal of First Amended Complaint Against [the Nakada Defendants], or in the Alternative for Summary Judgment, Filed on June 21, 2017" (**Order Granting Summary Judgment Motion Re Statute of Limitations**);   (3) August 22, 2017 "Order Granting [the Nakada Defendants'] Motion for Judgment on the Pleadings and Dismissal of Count II Claims for Breach of Covenant of Good Faith and Fair Dealing or in the Alternative Summary Judgment on Count II Claims, Filed on June 21, 2017"; (4) August 22, 2017 "Order Granting [the Nakada] Defendants' Motion for Judgment on the Pleadings and Dismissal of Count III Fraud Claims or in the Alternative Summary Judgment on Count III Fraud Claims, Filed on June 21, 2017"; and (5) August 22, 2017 "Order Denying Plaintiff's Motion for Partial Summary Judgment for Claims II & III against [the Nakada Defendants], filed on June 5, 2017" (**Order Denying Fukuda's Motion for Partial Summary Judgment**).

On appeal, Fukuda contends generally that the Circuit Court "erred when it granted [the Nakada Defendants'] several motions for dismissal of [Fukuda's] case and also denied [Fukuda's] motions to file and serve his second amended complaint and for partial summary judgment."[3]

We affirm the Final Judgment for the reasons set forth below.

---

[3]     Fukuda's opening brief fails to comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b) in numerous material respects.  For example, the opening brief generally fails to provide: (1) "record references supporting each statement of fact or mention of court . . . proceedings" in the statement of the case, as required by HRAP 28(b)(3); (2) a "concise statement of the points of error set forth in separately numbered paragraphs[,]" as required by HRAP 28(b)(4); (3) a statement of "where in the record the alleged error[s] [were] objected to or the manner in which the alleged error[s] [were] brought to the attention of the court," as required by HRAP 28(b)(4); and 5) "citations to the . . . parts of the record relied on" in the argument section, as required by HRAP 28(b)(7).  In particular, Fukuda makes numerous factual assertions without any citation to the record, and the argument section is general and conclusory.  Nevertheless, because we have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible[,]'" we address Fukuda's arguments to the extent they are discernible.  Morgan v. Planning Dep't, Cnty. of Kauai, 104 Hawaiʻi 173, 180-81, 86 P.3d 982, 989-90 (2004) (quoting O'Connor v. Diocese of Honolulu, 77 Hawaiʻi 383, 386, 885 P.2d 361, 364 (1994)).

## I.    Procedural Background

On May 3, 2010, Fukuda filed his initial Complaint against Daniel.  Fukuda alleged, among other things:

>      5.    On or about May 4, 2006, Defendant Daniel contacted Mr. Fukuda to retain his services regarding obtaining a loan to purchase a house located at 360 Puuikena Street, in Honolulu, Hawaii[ (**House**)].  At that time, Mr. Fukuda worked as a loan officer for Pacific International Funding, through which he was to search for the desired funding.
>
>      . . . .
>
>      7.  Defendant Daniel represented that he was fully ready, willing and able to purchase the House, and, that he was fully ready willing and able to borrow the money required to do so.
>
>      8.  On or about May 8, 2006 Defendant Daniel entered into a contract with Mr. Fukuda, whereby Defendant Daniel agreed to pay Mr. Fukuda 2% of the loan amount which Mr. Fukuda obtained for the purchase of the House.
>
>      . . . .
>
>      10.  . . . [O]n or about May 26, 2006, Mr. Fukuda obtained a loan approval for the amount requested to purchase the House.
>
>      . . . .
>
>      14.  On or about May 24, 2006, Mr. Fukuda assisted Defendant Daniel in drafting an offer for the purchase of the [H]ouse . . . .
>
>      15.  On or about May 25, 2006 Toyotaro Nakada, on behalf of Nitto Tsushinki Co., Ltd., the owner of the House, accepted Defendant Daniel'[s] offer to purchase it.
>
>      16.  Defendant Daniel refused or otherwise failed to cooperate in the loan process, resulting in non-purchasing of the House.

The Complaint asserted the following  claims against Daniel: (1) Count I, Breach of Contract; (2) Count II, Breach of Covenant of Good Faith and Fair Dealing; (3) Count III, Fraud; Fraud in Inducement of Contract; Fraudulent Breach of Contract; and (4) Count IV, Intentional Infliction of Emotional Distress (**IIED**).

On July 31, 2013, Fukuda filed a First Amended Complaint against Daniel and the Nakada Defendants, among others.[4/]  The First Amended Complaint alleged, among other things:

---

     [4/]    It appears that Fukuda did not seek leave of court to file the First Amended Complaint.

8. On or about May 4, 2006 Defendant Daniel as an accommodation for Defendant Mr. Nakada, Defendant Mrs. Nakada and Defendant and [sic] Nitto Tsushinki asked Mr. Fukuda regarding his services in obtaining a loan to purchase a house located at 360 Puuikena Street, in Honolulu, Hawaii . . . .

. . . .

10. Defendant Daniel as an accommodation for Defendant Mr. Nakada, Defendant Mrs. Nakada and Defendant Nitto Tsushinki represented that he was fully ready, willing and able to purchase the House, and, that he was fully ready willing and able to borrow the money required to do so.

11. On or about May 8, 2006 Defendant Daniel entered into a contract with Mr. Fukuda, whereby Defendant Daniel as the accomodator agreed to pay Mr. Fukuda 2% of the loan amount which Mr. Fukuda obtained for the purchase of the House.

. . . .

13. . . . [O]n or about May 26, 2006, Mr. Fukuda obtained a loan approval for the amount requested to purchase the House.

. . . .

16. On or about May 24, 2006, Mr. Fukuda assisted Defendant Daniel in drafting an offer for the purchase of the [H]ouse . . . .

17. On or about May 25, 2006 Defendants Mr. Nakada, Mrs. Nakada and Nitto Tsushinki on behalf of Nitto Tsushinki Co., Ltd., the owner of the House, accepted Defendant Daniel'[s] offer to purchase it.

18. Defendant Daniel and Defendant Mr. Nakada, Defendant Mrs. Nakada and Defendant Nitto Tsushinki refused or otherwise failed to cooperate in the loan process, resulting in non-purchasing of the House, all the while Defendant Mr. Nakada, who was the seller of the House as CEO of Nitto Tsushinki, was responsible for all costs incurred in the sale of the House while Defendant Mr. Nakada agreed not to make create another lien, or rent it back whatsoever to the lienholder bank without the written consent of Yachio Bank.

The First Amended Complaint asserted the following claims against Daniel and the Nakada Defendants: (1) Count I, Breach of Contract; (2) Count II, Breach of Covenant of Good Faith and Fair Dealing; (3) Count III, Fraud; Fraud in the Inducement of Contract; Fraudulent Breach of Contract; and (4) Count IV, IIED.

On January 6, 2015, the Nakada Defendants filed their answer to the First Amended Complaint. The answer alleged numerous affirmative defenses, including that Fukuda was barred from maintaining his action against the Nakada Defendants based upon the applicable statute of limitations.

On August 5, 2015, Daniel, through his bankruptcy attorney, filed a Notice of Stay of Proceedings.

On November 16, 2016, Fukuda filed "Plaintiff's Motion to Enter and Serve Plaintiff's Second Amended Complaint" (**Motion for Leave to File Second Amended Complaint**). Fukuda sought to add four new defendants and three claims, namely "fraud by omission" (to be included as part of Fukuda's existing fraud claim), negligence, and IIED.[5]

On April 10, 2017, Fukuda filed "Plaintiff's Ex Parte Motion to Dismiss [Defendant] Daniel From This Action," and on the same date, the Circuit Court set the trial of the case for the week of June 11, 2018. On June 27, 2017, the Circuit Court granted Fukuda's ex parte motion to dismiss Daniel.

On June 5, 2017, Fukuda filed "Plaintiff's Motion for Partial Summary Judgment for Claims II and III against [the Nakada Defendants]." On July 7, 2017, the Nakada Defendants filed their memorandum in opposition to the motion, with accompanying exhibits.

On June 21, 2017, the Nakada Defendants filed a series of three motions for judgment on the pleadings or, in the alternative, for summary judgment (collectively, the **Nakada Defendants' Summary Judgment Motions**). This series included the "Motion for Judgment on the Pleadings and Dismissal of the First Amended Complaint Against [the Nakada Defendants], or in the Alternative for Summary Judgment," in which the Nakada Defendants argued that the remaining claims asserted against them in the First Amended Complaint were barred by the applicable statute of limitations (**Summary Judgment Motion Re Statute of Limitations**). On July 17, 2017, Fukuda filed his memorandum in opposition to the Summary Judgment Motion Re Statute of Limitations.

On August 9, 2017, the Circuit Court entered the Order Denying Motion for Leave to File Second Amended Complaint.

On August 22, 2017, the Circuit Court entered a series of orders granting the Nakada Defendants' Summary Judgment

---

[5] On March 3, 2014, Fukuda had moved, *inter alia*, to withdraw his IIED claim from the First Amended Complaint. The IIED claim was "deemed withdrawn" pursuant to the Circuit Court's June 10, 2014 order.

Motions (collectively, **Orders Granting the Nakada Defendants'
Summary Judgment Motions**), including the Order Granting Summary
Judgment Motion Re Statute of Limitations.  On the same date, the
Circuit Court entered the Order Denying Fukuda's Motion for
Partial Summary Judgment.

## II.  Standards of Review

### A.  Leave to Amend

We review orders denying motions for leave to amend a
complaint for an abuse of discretion.  See Office of Hawaiian
Affairs v. State of Hawaiʻi, 110 Hawaiʻi 338, 351, 133 P.3d 767,
780 (2006) (citing Hirasa v. Burtner, 68 Haw. 22, 26, 702 P.2d
772, 776 (1985)).

> The trial court abuses its discretion if it bases its ruling
> on an erroneous view of the law or on a clearly erroneous
> assessment of the evidence.  Stated differently, an abuse of
> discretion occurs where the trial court has clearly exceeded
> the bounds of reason or disregarded rules or principles of
> law or practice to the substantial detriment of a party
> litigant.

Id. (quoting Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 30, 79
P.3d 119, 123 (2003)).

### B.  Summary Judgment

An appellate court reviews a trial court's grant or
denial of summary judgment de novo using the same standard
applied by the trial court.  Nozawa v. Operating Eng'rs Local
Union No. 3, 142 Hawaiʻi 331, 338, 418 P.3d 1187, 1194 (2018)
(citing Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 12, 346 P.3d
70, 81 (2015)).  "Summary judgment is appropriate if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue as to any material fact and that
the moving party is entitled to a judgment as a matter of law."
Id. at 342, 418 P.3d at 1198 (quoting Adams, 135 Hawaiʻi at 12,
346 P.3d at 81) (brackets omitted).  "A fact is material if proof
of that fact would have the effect of establishing or refuting
one of the essential elements of a cause of action or defense
asserted by the parties."  Id. (quoting Adams, 135 Hawaiʻi at 12,

346 P.3d at 81).

The moving party has the burden to establish that summary judgment is proper. Id. (citing French v. Haw. Pizza Hut, Inc., 105 Hawai‘i 462, 470, 99 P.3d 1046, 1054 (2004)). "Once a summary judgment movant has satisfied its initial burden of producing support for its claim that there is no genuine issue of material fact, the party opposing summary judgment must 'demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.'" Id. (quoting Lales v. Wholesale Motors Co., 133 Hawai‘i 332, 359, 328 P.3d 341, 368 (2014)) (brackets omitted). "The evidence must be viewed in the light most favorable to the non-moving party." Id. (quoting Adams, 135 Hawai‘i at 12, 346 P.3d at 81) (brackets omitted).

## III. Discussion

### A. Order Denying Motion for Leave to File Second Amended Complaint

Fukuda argues generally that the Circuit Court "erred because it abused its discretion when it failed to liberally grant [Fukuda] leave to amend his First Amended Complaint." Fukuda further contends "there was no evidence that the [Nakada Defendants] would suffer harm or prejudice if [Fukuda] amended his First Amended Complaint."

The Motion for Leave to File Second Amended Complaint was governed by Hawai‘i Rules of Civil Procedure (**HRCP**) Rule 15(a)(2), which provides in relevant part:

> [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

In interpreting this rule, the Hawai‘i Supreme Court has looked to the general standard applied by federal courts. See Office of Hawaiian Affairs, 110 Hawai‘i at 365, 133 P.3d at 794 (citing Gonsalves v. Nissan Motor Corp. in Hawai‘i, 100 Hawai‘i 149, 160, 58 P.3d 1196, 1207 (2002)); Hirasa, 68 Haw. at 26, 702 P.2d at 775.

7

Regarding this standard, the supreme court has explained:

> In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. the leave should, as the rules require, be "freely given."

Hirasa, 68 Haw. at 26, 702 P.2d at 775 (1985) (ellipses omitted) (quoting Bishop Trust Co. v. Kamokila Dev. Corp., 57 Haw. 330, 337, 555 P.2d 1193, 1198 (1976), quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  The supreme court also has stated:

> Where the proposed amendments to a complaint are, inter alia, futile, a court may deny a motion for leave to file the amended complaint.  Federal courts have further explained that an amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss for failure to state a claim pursuant to FRCP Rule 12(b)(6).

Kealoha v. Machado, 131 Hawaiʻi 62, 80, 315 P.3d 213, 231 (2013) (brackets omitted) (quoting Office of Hawaiian Affairs, 110 Hawaiʻi at 365, 133 P.3d at 794); see Fed. Home Loan Mortg. Corp. v. Transamerica Ins. Co., 89 Haw. 157, 166, 969 P.2d 1275, 1284 (1998) ("While HRCP Rule 15(a) provides that leave to amend the pleadings should be 'freely given when justice so requires,' the trial court does not abuse its discretion in refusing leave to amend where such an amendment would be futile.").

Here, Fukuda sought in the proposed Second Amended Complaint to add four new defendants and three claims, namely "fraud by omission" (to be included as part of Fukuda's existing fraud claim), negligence, and IIED.[6/]  The proposed amendments were based on new allegations that the proposed new defendants "failed to disclose in the MLS listing and disclosure statements that this was a Short sale and a fraudulent transfer was about to take place" and that "all Defendants transacted without

---

[6/]     These three claims appear to have overlapped with claims previously asserted against Daniel and the Nakada defendants.  The First Amended Complaint asserted, *inter alia*, claims for "Fraud; Fraud in the Inducement of Contract; Fraudulent Breach of Contract" (Count III) and IIED (Count IV) against Daniel and the Nakada Defendants.  In addition, the First Amended Complaint included negligence-based allegations in the IIED claim (*e.g.*, "DEFENDANTS' joint and/or several negligence was a breach of its duty and the proximate cause and direct cause of Mr. Fukuda's injuries.").

8

disclosing the sale was a Short sale and was also a fraudulent transfer . . . ."  The nature of the "short sale" and "fraudulent transfer" and how this alleged transaction harmed Fukuda were not further described.  Fukuda's memorandum in support of the Motion For Leave to File Second Amended Complaint offered no further detail regarding the new allegations.  As to the proposed new defendants, Fukuda stated in part:  "I wasn't clear enough to add these Defendants until now to this complaint regarding the omission of the short sale as it was also said to me that [counsel for the Nakada Defendants] was dealing with this transaction because of the tree encumbrance.  Then I had to add the Japan Defendants and that took nearly 2 years."

The Nakada Defendants opposed the Motion For Leave to File Second Amended Complaint on several grounds.  First, the Nakada Defendants argued that the motion was untimely, and Fukuda had not shown good cause for filing the motion more than six and a half years after filing the initial Complaint.  Second, the Nakada Defendants argued that the motion was futile, because the "statutes of limitations have long since expired for the claims and damages that . . . Fukuda is attempting to pursue against Lee, Worrall, Sotheby's and TGES."  (Emphasis omitted.)  More specifically, the Nakada Defendants argued:

> The time period for bringing tort claims is two years (see, HRS § 657-7) and the time period for bring contract actions is six years (see, HRS § 657-1).  Either way, . . . Fukuda's new claims against these new parties are barred by the applicable statutes of limitations because more than nine years have elapsed since these claims accrued.

Similarly, the Nakada Defendants argued that the proposed new claims against the existing parties were futile.  Third, the Nakada Defendants argued that the motion was made in bad faith and with dilatory motive.

On January 4, 2017, the Circuit Court heard the Motion For Leave to File Second Amended Complaint.  During the hearing, the Circuit Court engaged in an extensive discussion with Fukuda "to gain an understanding of the bases for the motion . . . because they are not clearly delineated in the pleadings."  Toward that end, the Circuit Court asked Fukuda to explain, for example, what he meant by "short sale" and "fraudulent transfer."

Fukuda's responses were scattered, often circular, and difficult to understand.  The Circuit Court also repeatedly asked Fukuda to explain how "the alleged short sale circumstance" interfered with or adversely affected Fukuda's "ability to do [his] job" or "ability to find financing for the purchase price?"  Fukuda responded in part:

> I did my job all the way up until the day that [Daniel] said that he didn't have the kala, the money, the money that he promised on the DROA and the money that he put down against the mortgage, applying for the mortgage, which he violated Title 18 on.  Because I had to go pull the bank records, and he didn't have that.

The discussion continued as follows:

> THE COURT: . . . I see in your second amended complaint Mr. Daniel's name is all over that document.  You understand you cannot sue him.  This claim against Mr. Daniel has been discharged in bankruptcy.
>
> MR. FUKUDA:  Yes.
>
> THE COURT:  So all this thing that Mr. Daniel allegedly did that was wrong toward you is meaningless in a sense that you cannot recover any claim or damages from Mr. Daniel.  So we're now focusing on other parties.  So I'm trying to figure out what did these other parties do to harm you? . . . [I]t doesn't help to say, well, at the last minute I got all the financing lined up and then Mr. Daniel said he didn't have the money.  That's still a claim against something he did wrong maybe, but I don't see -- you said -- now, on the record you said you did your job, you got the financing, so what was it that this short sale and fraudulent transfer prevented you or –- from doing or harmed you?
>
> MR. FUKUDA:  You know, even without my knowledge, yeah, from the very beginning of all of this, yeah, now these things that weren't disclosed, the short sale, the straw buyer, you know, all that, I -- if Mr. Nakada had sent Anthony the $250,000 down to put up against the loan, the thing would've run through and it could've closed.  And he did it on the other -- he did it -- Mr. Nakada obviously did it several times after that, so why he didn't do it for mine, I don't know.

Following the extensive colloquy with Fukuda, the Circuit Court concluded that the proposed amendments were futile:

> THE COURT: All right. This is a motion for leave to file second amended complaint. The second amended complaint is essentially aimed at adding new defendants, that would be Kainoa Lee and Mary Worrall, . . . individually and as LIST, . . . Sotheby's, . . . International Realty, Inc. and Title Guaranty; and to add three claims, one for fraud by omission, Count 3; Count 4 for negligence; and Count 5 for intentional infliction of emotional distress, all based upon the allegation that these prospective defendants failed to disclose a short sale circumstance that we've discussed

10

> extensively, and a fraudulent transfer allegedly.
>
> And as a result of my discussions with Mr. Fukuda on the record, this court is left with the impression that these claims have no merit, and what Mr. Fukuda is complaining of boils down to his frustrations and disappointments against Mr. Daniel. And as the Court indicated, the bankruptcy court has already discharged Mr. Fukuda's claims against Mr. Daniel in bankruptcy, so this court cannot allow Mr. Daniel to be brought in -- back into this case for essentially the same allegations. So the proposed amendments are futile in this court's view.

Consistent with the court's oral ruling, the Order Denying Motion for Leave to File Second Amended Complaint stated in relevant part: "The Court finds that there is no good cause for the Motion and that the Motion is futile."

We conclude that on this record, the Circuit Court did not abuse its discretion in denying the Motion for Leave to File Second Amended Complaint. Fukuda provided no satisfactory explanation for his failure to fully develop his original contentions in a timely manner. The proposed Second Amended Complaint, which would have been filed over six and a half years after the original Complaint, did not delineate the nature of the alleged "short sale" and "fraudulent transfer" and how this alleged transaction harmed Fukuda. In sum, the new allegations were not sufficient to state the newly proposed claims. Based on these insufficient allegations, as well as Fukuda's oral statements during the hearing on the motion,[7] the Circuit Court

---

[7]    Regarding the January 4, 2017 hearing, Fukuda argues:

> [T]he [C]ircuit [C]ourt prejudiced [Fukuda] in favor of [the Nakada Defendants] during the hearing on [Fukuda's] motion for leave to file a second amended complaint. Specifically, the [C]ircuit [C]ourt admitted during the hearing that it "did [counsel for the Nakada Defendants'] work for [him]", and did so to such an incredibly large degree that counsel thanked the [C]ircuit [C]ourt.

Fukuda's contentions are without merit. In questioning Fukuda, the Circuit Court was merely trying to understand the bases for Fukuda's contentions. Indeed, the Circuit Court explained:

> The second thing the Court feels obligated to clarify for the record was [counsel for the Nakada Defendants'] thanking the Court for doing his job in flushing out the nature of these claims. The Court was not flushing out the allegations of short sale and fraudulent transfer to assist [counsel for the Nakada Defendants], so any implication that he was thanking the Court for this court assisting him has no basis. I'm not sure why he thanked the Court.

(continued...)

11

reasonably concluded that the proposed amendments would be futile. Accordingly, the court did not err in denying the Motion for Leave to File Second Amended Complaint.

**B.    Orders Granting the Nakada Defendants' Summary Judgment Motions**

Fukuda argues generally that the Circuit Court erred in granting the Nakada Defendants' Summary Judgment Motions "because [the court] did not construe [Fukuda's] pleadings liberally and did not adhere to the preference that [Fukuda] be given an opportunity to litigate his claims on the merits." With respect to the Order Granting Summary Judgment Motion Re Statute of Limitations, Fukuda contends that an "example of the [C]ircuit [C]ourt failing to afford [Fukuda] the opportunity to have his case fully heard on the merits is the [C]ircuit [C]ourt's decision that [Fukuda] failed to file his First Amended Complaint within the applicable statute of limitations period." Fukuda asserts that he "spent considerable time trying to litigate his case correctly" and that "once [Fukuda] discovered the identities of [the Nakada Defendants], he immediately brought them in to the lawsuit[.]"

The Order Granting Summary Judgment Motion Re Statute of Limitations stated in relevant part:

> The Court, having carefully read and considered the files herein and matters outside of the pleadings, including the memoranda, declarations, and the exhibits submitted, and having heard and considered the arguments of Plaintiff and counsel and having applied the summary judgment standard to the Motion, determines as a matter of law that the First Amended Complaint was not timely filed within the six-year statute of limitations and that the amendment cannot relate back to the date of the filing of the Complaint and that there are no genuine issues of material fact which preclude the granting of the Motion, and that there is good cause to grant the Motion, and that Defendants are entitled to judgment as a matter of law[.]

Because the Circuit Court treated the motion as one for summary judgment, this court reviews *de novo* whether the Nakada

---

[7] (...continued)
But this court was trying to gain an understanding of the bases for the motion, and the Court did not understand what a short sale was or the fraudulent transfer reference was because they are not clearly delineated in the pleadings, and so this court had no idea what Mr. Fukuda was alluding to by using those terms.

Defendants were entitled to summary judgment based on their statute of limitations defense. See Bureaus Inv. Grp., No. 2, LLC v. Harris, No. 30699, 2013 WL 6231742, at *3 (Haw. App. Nov. 29, 2013) (Mem.) (citing Wong v. Cayetano, 111 Hawaiʻi 462, 476, 143 P.3d 1, 15 (2006)).

Fukuda's First Amended Complaint asserted the following claims against Daniel and the Nakada Defendants: (1) Count I, Breach of Contract; (2) Count II, Breach of Covenant of Good Faith and Fair Dealing; (3) Count III, Fraud; Fraud in the Inducement of Contract; Fraudulent Breach of Contract; and (4) Count IV, IIED. On April 4, 2014, Fukuda moved, *inter alia*, to withdraw his breach of contract claim from the First Amended Complaint, which claim was "deem[ed] . . . [w]ithdrawn" pursuant to the Circuit Court's June 20, 2014 order. Fukuda does not challenge this order on appeal and has waived any issue regarding the withdrawal of his breach of contract claim. See HRAP Rule 28(b)(4),(7). Similarly, on March 3, 2014, Fukuda moved, *inter alia*, to withdraw his IIED claim from the First Amended Complaint, which claim was "deemed withdrawn" pursuant to the Circuit Court's June 10, 2014 order. Fukuda does not challenge this order on appeal and has waived any issue regarding the withdrawal of his IIED claim. See HRAP Rule 28(b)(4),(7).

As to Fukuda's remaining claims, we need not determine exactly which general statute of limitations applies, because six years is the longest statute of limitations potentially applicable to the First Amended Complaint. See HRS §§ 657-1.[8]

---

[8]    HRS § 657-1 provides, in relevant part:

The following actions shall be commenced within six years next after the cause of action accrued, and not after:

(1)    Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 577A;

. . . .

(4)    Personal actions of any nature whatsoever not
(continued...)

13

"Under Hawaii's discovery rule, the statute of limitations begins to run when the plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter." Thomas v. Kidani, 126 Hawaiʻi 125, 132, 267 P.3d 1230, 1237 (2011) (quoting Yamaguchi v. Queen's Med. Ctr., 65 Haw. 84, 90, 648 P.2d 689, 693-94 (1982)) (internal quotation marks omitted). In Thomas, the supreme court indicated that the discovery rule applies to cases alleging fraud based on misrepresentation. Id. at 127, 132, 267 P.3d at 1232, 1237. The court also stated that "[w]hen there has been a belated discovery of the cause of action, the issue whether the plaintiff exercised reasonable diligence is a question of fact for the court or jury to decide." Id. at 133, 267 P.3d at 1238 (quoting Vidinha v. Miyaki, 112 Hawaiʻi 336, 342, 145 P.3d 879, 885 (App. 2006)).

However, in Russell v. Attco, Inc., the supreme court rejected the contention that "a cause of action accrues only when the claimant determines the identity of the wrongdoer who caused the harm to the claimant." 82 Hawaiʻi 461, 463, 923 P.2d 403, 405 (1996). The court explained:

> [I]n the present case, it is not the negligent act, the damage, or the causal connection between the former and the latter that the [plaintiffs] failed to "discover" prior to the filing of their complaint in the present case; all that the [plaintiffs] were unaware of was the party who placed the black plastic liner, over which [the injured plaintiff] tripped, onto the ground. This is confirmed by the fact that the [plaintiffs] brought suit for the same injuries stemming from the same incident in a separate suit against Hyatt, and, in fact, attempted to name [the company that placed the black plastic liner] as a party to that suit. The [plaintiffs'] cause of action therefore accrued on the date of the accident, when the [plaintiffs'] awareness of the facts necessary for an actionable claim coalesced, that is, when they realized that the placement of the liner caused [the injured plaintiff] to trip, fall, and sustain injuries.

82 Hawaiʻi at 464-65, 923 P.2d at 406-07. The court therefore "decline[d] to hold that the application of the discovery rule results in the delaying of the accrual of the [plaintiffs'] cause of action," and affirmed the circuit court's summary judgment ruling that the plaintiffs' suit was barred by the applicable

---

[8]/ (...continued)
specifically covered by the laws of the State.

statute of limitations.  Id. at 461-62, 465, 923 P.2d at 403-04, 407.

In the Summary Judgment Motion Re Statute of Limitations, the Nakada Defendants argued that the remaining claims asserted against them in the First Amended Complaint were barred by the applicable statute of limitations.  Specifically, the Nakada Defendants contended:

> [Fukuda's] alleged causes of action against the [Nakada] Defendants accrued in or shortly after May 2006 and in no event later than July 2, 2007.  [Fukuda] did not file the initial Complaint against Anthony Daniel until May 3, 2010 and the First Amended Complaint against the [Nakada] Defendants until July 31, 2013.  In addition, the [Nakada] Defendants did not receive any notice of these claims and were not served with process until late in 2014, another 17 months later.  More than six years expired between the conduct that [Fukuda] contends gives rise to his causes of action and the filing of the First Amended Complaint herein naming the [Nakada] Defendants.

In support of their argument regarding the accrual of Fukuda's claims, the Nakada Defendants submitted Fukuda's initial Complaint, which alleged that the conduct giving rise to his claims occurred in May 2006, and that Toyotaro, on behalf of NTC, the owner of the House, accepted Daniel's offer to purchase it. The Nakada Defendants also submitted deposition testimony of Fukuda indicating that he met Sonia at Fukuda's office in June or July of 2006 when the sale of the House was cancelled.  When asked "why were you meeting with Sonia" and "what was the subject matter of the meeting other than the cancellation of the sale?" Fukuda responded, "Well, she had voluntarily told me things, like, I didn't want anybody to live in the house except [Daniel]. And then later on I asked [Daniel] if she -- if he was going to sell the house back to them; and he said, yeah, something like that so . . . .  And she had also disclosed to me that --" (Formatting altered.)  Fukuda further stated that he "voluntarily left the sale on July 2nd, 2007."  Together, the pleadings and the deposition testimony established that Fukuda knew or should have known, by mid-2006, the basis for the claims he alleged against the Nakada Defendants in the First Amended Complaint, which he did not file until July 31, 2013, more than seven years later.

15

The Nakada Defendants also contended that the claims asserted against them in the First Amended Complaint did not relate back to the filing of the initial Complaint pursuant to HRCP Rule 15(c)(3).  In support of this argument, the Nakada Defendants submitted Toyotaro's declaration, which stated in part that he did not learn about the pendency of this case until he and his wife (Sonia) were served with the First Amended Complaint in late 2014.

Based on the pleadings and evidence submitted by the Nakada Defendants, we conclude that they satisfied their initial burden of producing support for their contention that they were entitled to judgment as a matter of law based on their statute of limitations defense.

In opposing the Summary Judgment Motion Re Statute of Limitations, Fukuda did not "demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial" with respect to the Nakada Defendants' statute of limitations defense.  Nozawa, 142 Hawaiʻi at 342, 418 P.3d at 1198.  In particular, Fukuda did not demonstrate specific facts that presented a genuine issue regarding the mid-2006 accrual of his claims against the Nakada Defendants.[9]  Rather, Fukuda asserted in his opposition memorandum that he was trying to develop supporting evidence to prove his claims against the Nakada Defendants.[10]  This general allegation was insufficient as a matter of law to raise a genuine issue for trial regarding the

---

[9]     In addition, Fukuda did not respond to the Nakada Defendants' contentions and supporting evidence that the claims asserted against them in the First Amended Complaint did not relate back to the filing of the initial Complaint pursuant to HRCP Rule 15(c)(3).

[10]     Although the Circuit Court held a hearing on the Nakada Defendant's Summary Judgment Motions, Fukuda did not provide this court with the relevant transcripts.  See HRAP Rule 11(a)("It is the responsibility of each appellant to provide a record . . . that is sufficient to review the points asserted and to pursue appropriate proceedings in the court or agency appealed from to correct any omission."); see also Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) ("The burden is upon appellant in an appeal to show error by reference to matters in the record, and he [or she] has the responsibility of providing an adequate transcript." (quoting Union Bldg. Materials Corp. v. The Kakaako Corp., 5 Haw. App. 146, 151, 682 P.2d 82, 87 (1984))); Woodruff v. Hawaiʻi Pac. Health, No. 29447, 2014 WL 128607, at *9 (Haw. App. Jan. 14, 2014) (Mem.) (noting that "we will resolve any dispute over matters presented at the hearings that cannot be resolved due to the absence of the transcripts in favor of affirming the Circuit Court's rulings").

16

accrual of Fukuda's claims, the basis for which he knew or should have known by mid-2006.  <u>See</u> <u>Au v. Au</u>, 63 Haw. 210, 215-16, 626 P.2d 173, 178 (1981) ("It is not necessary that a party should know the details of the evidence by which to establish his cause of action.  It is enough that he knows that a cause of action exists in his favor . . . ."); <u>Russell</u>, 82 Hawai'i at 464-65, 923 P.2d at 406-07.

Because more than six years elapsed between the accrual of Fukuda's claims and the filing of the First Amended Complaint naming the Nakada Defendants, the Nakada Defendants were entitled to summary judgment based on their statute of limitations defense, and the Circuit Court did not err in granting the Summary Judgment Motion Re Statute of Limitations.

Given our conclusion, we do not reach the remaining issues raised by Fukuda on appeal.

## IV.  Conclusion

For these reasons, we affirm the Final Judgment, entered on September 12, 2017, in the Circuit Court of the First Circuit.

DATED:  Honolulu, Hawai'i, June 30, 2021.


On the brief:                          /s/ Lisa M. Ginoza
                                       Chief Judge
Mark Fukuda
Self-represented Plaintiff-
Appellant.                             /s/ Clyde J. Wadsworth
                                       Associate Judge


                                       /s/ Karen T. Nakasone
                                       Associate Judge